**FILED**

**November 10, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0642–*Buffey v. Ballard*

LOUGHRY, J., concurring:

"The State's obligation is not to convict, but to see that, so far as possible, truth emerges." *Giles v. Maryland*, 386 U.S. 66, 98 (1967) (Fortas, J., concurring). Nearly forty years ago this appellate body addressed the role of the prosecutor with regard to this same critical tenet of criminal law:

> The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law.

Syl. Pt. 3, *State v. Boyd*, 160 W. Va. 234, 233 S.E.2d 710 (1977). It is plain that the State's overwhelming desire to obtain a conviction for this unspeakable crime of violence fueled a legally untenable series of events which culminated in the petitioner's thirteen-year period of incarceration. My agreement with the grant of habeas relief is grounded solely on this Court's interpretation of *Brady v. Maryland*, 373 U.S. 83 (1963), and our related conclusion that *Brady's* disclosure requirements extend to evidence in the State's control that is favorable to the defendant regardless of whether a plea agreement or trial ensues. It is upon that basis which I concur in the majority's decision that the petitioner may withdraw his plea of guilty and proceed to trial. Our system of justice demands nothing less.

1

My agreement with the majority's procedural-based resolution should not be read to suggest that the relief being granted in this case is driven by evidentiary proof of the petitioner's guilt or innocence. As the United States Supreme Court long ago made clear, "the suppression by the prosecution of evidence *favorable to an accused* upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87 (emphasis added). The Supreme Court explained further that this holding is applicable to evidence "which, if made available, would *tend* to exculpate him or reduce the penalty[.]" *Id.* at 87-88 (emphasis added). In the case at bar, there can be little question that the suppressed DNA evidence, identifying someone other than the petitioner as the perpetrator is both "favorable" to the petitioner and "tends" to exculpate him.[1] Furthermore, the parties' protestations concerning what this DNA evidence proves is simply irrelevant to the issue before us given the State's

---

[1]There is no merit to the State's contention that any disclosure requirement was obviated by the prosecutor's personal lack of awareness of the DNA evidence. As the Supreme Court has made clear,

> the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, *see Brady*, 373 U.S. at 87, 83 S. Ct. at 1196-1197), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is *inescapable*.

*Kyles v. Whitley,* 514 U.S. 419, 437-38 (1995) (emphasis added).

2

failure to meet the requirements of *Brady*.

The State has posited several explanations for why the suppressed DNA evidence does not fully exonerate the petitioner. Of critical import, however, is the fact that *Brady* does not require evidence to establish complete and unequivocal exoneration before the duty of disclosure arises. A *Brady* violation results if material evidence, favorable to the accused, is suppressed by the prosecution. *United States v. Ohiri*, 133 F. App'x 555 (10th Cir. 2005). Moreover, the

> touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Kyles*, 514 U.S. at 434. Whether *Brady* evidence creates a reasonable doubt sufficient to preclude conviction is a matter left to the sound discretion of a jury. In this case, the extraordinarily conflicting nature of the underlying witness testimony only serves to underscore the critical role of the factfinder. When the DNA evidence and resulting conviction of Adam Bowers as a perpetrator of the instant crime is coupled with the State's failure to produce the exculpatory DNA evidence, there can only be doubt regarding whether due process was afforded to the petitioner.

I write separately to emphasize the role of the prosecutor and the potentially

3

devastating effects when the prosecutor fails to act in the interests of justice.  As the United

States Supreme Court eloquently explained long ago, a prosecutor is

> the representative not of an ordinary party to a controversy, but
> of a sovereignty whose obligation to govern impartially is as
> compelling as its obligation to govern at all; and whose interest,
> therefore, in a criminal prosecution is not that it shall win a case,
> but that justice shall be done.

*Berger v. United States*, 295 U.S. 78, 88 (1935).  When the State fails in this obligation, it

is not only the rights of the individual defendant that are compromised, but the public's

confidence in our system of justice as well.  This is not merely a high-minded academic

proposition.   The public's ever-eroding confidence in our system of justice is well-

documented as the images of the good, honest, hard-working police officers, prosecutors, and

judges are often tarnished as a result of the improper actions of a few unscrupulous public

servants.  An unfortunate example leading to the public's distrust of its governmental

officials is readily found in the Fred Zain controversy involving the West Virginia State

Police Crime Laboratory.[2]

---

[2]In 1993, this Court appointed a special judge to conduct an investigation into allegations that Fred Zain, a forensic serologist with the West Virginia State Police Crime Laboratory, had systematically falsified his reports and had given false testimony in numerous criminal prosecutions.  The investigation revealed that Trooper Zain had intentionally and systematically given inaccurate, invalid, and false testimony and reports in as many as 134 criminal cases between 1979 and 1989.  This resulted in several individuals being sent to prison for crimes they did not commit.  Consequently, in *In the Matter of the West Virginia State Police Crime Laboratory, Serology Division* ("*Zain* I"), 190 W.Va. 321, 340, 438 S.E.2d 501, 520 (1993), this Court adopted the finding of the special judge that

> as a matter of law, any testimonial or documentary evidence

Moreover, this Court's decision to remand for a trial is in keeping with the laudable objective of our judicial system: to properly employ the rule of law to enable this State's citizenry to resolve matters of controversy or disputes in a fair and impartial manner. Considering the other potentially inculpatory evidence in this matter, a blithe declaration of the petitioner's innocence based on the DNA evidence alone would not serve to further the ends of justice. As the United States Supreme Court observed, "[a reversal] reflects a difference in outlook normally found between personnel comprising different courts. However, reversal by a higher court is not proof that justice is thereby better done." *Brown v. Allen*, 344 U.S. 443, 540 (1953) (Jackson, J., concurring), *overruled on other grounds by Townsend v. Sain*, 372 U.S. 293 (1963). As the Supreme Court noted in *Berger*, the

offered by Zain at any time in any criminal prosecution should be deemed invalid, unreliable, and inadmissible in determining whether to award a new trial in any subsequent habeas corpus proceeding. The only issue in any habeas corpus proceeding would be whether the evidence presented at or prior to trial or prior to the entry of a guilty plea, independent of the forensic evidence presented by Zain, would have been sufficient to support the verdict or plea.

Unfortunately, the inquiry did not end with *Zain* I. In 1994, this Court was confronted with another question surrounding the State's Crime Lab. This time, another investigation ensued following the concern of whether serologists, other than Trooper Zain, had also falsified evidence in criminal prosecutions. *See In the Matter of the West Virginia State Police Crime Laboratory, Serology Division* ("*Zain* II"), 191 W.Va. 224, 445 S.E.2d 165 (1994). In 1999, a third investigation of the Serology Division of the Crime Lab occurred. The issue once again was whether State serologists, other than Fred Zain, falsified evidence in criminal prosecutions. *See In the Matter of: Renewed Investigation of the State Police Crime Laboratory, Serology Division* ("*Zain* III"), 219 W.Va. 408, 633 S.E.2d 762 (2006).

fundamental purpose of a state's powers is that "guilt shall not escape or innocence suffer." 295 U.S. at 88. An affirmance of the lower court or an outright reversal and release of the petitioner would merely beg the question either way: would this Court be causing the guilty to escape or allowing the innocent to suffer? As such, the only just resolution to this matter is to allow the petitioner to withdraw his plea and proceed to trial.

My concern regarding the State's conduct in this case is rooted in the following observation: "It is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Id.* at 88. There is simply no room in our judicial system for unethical evidentiary gamesmanship. The critical need to prevent the prosecution from employing ethically dubious methods to achieve a conviction is proven where, as here, the suppressed evidence, under any reasonable construction, qualifies as exculpatory in nature. Accordingly, I respectfully concur.