**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-6719**

CALVIN GARRETT GRAY,

            Petitioner – Appellant,

    v.

DAVID BALLARD,

            Respondent – Appellee.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  John T. Copenhaver, Jr., District Judge.  (2:13-cv-23807)

Argued:  December 8, 2016                       Decided:  February 8, 2017

Before TRAXLER, FLOYD, and THACKER, Circuit Judges.

Affirmed by published opinion.  Judge Floyd wrote the opinion, in which Judge Traxler and Judge Thacker joined.

**ARGUED:** Erin Galliher, Brennan Curtis, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant.  Elbert Lin, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee.  **ON BRIEF:** Stephen L. Braga, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant.  Patrick Morrisey, Attorney General, Gordon L. Mowen, II, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee.

FLOYD, Circuit Judge:

Appellant Calvin Gray filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which the district court denied as untimely. Gray appeals this denial, arguing that his petition was timely because it was filed within one year of his discovery of his petition's factual predicates, which Gray contends he could not have discovered sooner than he did. We disagree, and find that had Gray exercised due diligence, he would have discovered these factual predicates far earlier. For this reason, we affirm the district court's denial of Gray's petition.

I.

In 1991, Appellant Calvin Gray was convicted by a West Virginia court of murder in the first degree. We detail his crime to the extent the facts are relevant to his § 2254 petition. On or about November 12, 1990, Christopher Dillard and Artissa Bennett were stabbed to death, and their bodies found on Tank Hill in Mercer County, West Virginia. Earlier that day, Dillard and Bennett had visited Gray at his home, and became engaged in an altercation with Gray and Gray's half-brother, Karl Finney. Finney stabbed and killed Dillard at the house, and was later convicted of his murder. Gray's young nephew, Omega Rosire, testified at Gray's trial that after Finney stabbed Dillard, Gray and Finney dragged Dillard to Gray's van, and then forced Bennett into the van as well. Rosire stated that he and Gray then drove the van to Tank Hill, and that upon their arrival, Gray took Bennett out of the van and walked her down the hill. Rosire heard Bennett scream

2

and then heard the screaming abruptly stop, and saw the white coat that Bennett had been wearing fly up in the air.

At his trial, Gray testified on his own behalf. He admitted to fighting with Dillard and transporting Dillard and Bennett to Tank Hill; however, he claimed that Finney stabbed both Bennett and Dillard at the house, and that both Bennett and Dillard were already dead when he left their bodies on the hill.

At Gray's trial, Trooper H.B. Myers from the Serology Division of the West Virginia State Police Crime Laboratory testified about serology evidence found at Gray's home and on Tank Hill. Myers testified that blood found on leaves on the hill, on Bennett's coat and scarf, and on a pair of Gray's pants was consistent with Bennett's blood, and not with that of Gray, Finney, or Dillard. He also testified that one blood stain found on Gray's van was consistent with Dillard's blood, and not with the others' blood. He further testified that another sample from the van was inconclusive, because it was consistent with both Gray's and Finney's blood. Myers prepared an expert report regarding this evidence, but the report was not submitted to the jury. The jury was not informed of Gray's blood type at any time, and Myers was the only witness to testify regarding serological testing. Prior to trial, Gray's attorney made a motion for Gray's blood to be tested independently, which was granted. However, the attorney did not follow up on this matter. Therefore, Gray's blood was never independently tested.

The jury found Gray guilty of murder in the first degree. He was sentenced on August 30, 1991, to life in prison. He filed a petition for appeal with the Supreme Court of Appeals of West Virginia on March 6, 1992, which the court refused on June 10, 1992.

3

On November 8, 1998, Gray filed his first state petition for a writ of habeas corpus. Gray asserted several claims, including a claim that tainted serology evidence had been presented at his trial by Myers. Namely, Gray claimed that his blood type was not Type B, as reflected in Myers's serology report, but rather, Type A. Gray discovered that his blood type was Type A after undergoing medical testing in February of 1998. Gray's petition as it pertains to the blood evidence is still pending.[1]

On August 22, 2006, Gray filed a second petition for a writ of habeas corpus. This petition focused on separate issues with serological evidence used at Gray's trial. Gray learned of these issues from the "*Zain III* report," a report that was generated during a court-ordered investigation of the practices of the Serology Division of the West Virginia State Police Crime Laboratory. *See In re Renewed Investigation of State Police Crime Lab., Serology Div.* (*Zain III*), 633 S.E.2d 762, 765-66 (W. Va. 2006).[2] In conducting this investigation, the investigators retested the blood evidence from Gray's case. They

---

[1] A different claim in the petition regarding jury instructions was resolved against Gray on October 1, 2004, and the West Virginia Supreme Court of Appeals denied an appeal petition on March 9, 2005.

[2] The *Zain* decisions are a trilogy of opinions issued by the Supreme Court of Appeals of West Virginia. *Zain I* recognized that serology evidence presented by Fred Zain, a serologist with the Serology Division of the State Police Crime Laboratory from 1979 to 1989, may have been tainted. *In re W. Va. State Police Crime Lab., Serology Div.* (*Zain I*), 438 S.E.2d 501 (W. Va. 1993). *Zain II* held that criminal defendants could only challenge the West Virginia State Police Crime Lab's evidence if Fred Zain was directly involved. *In re W. Va. State Police Crime Lab., Serology Div.* (*Zain II*), 445 S.E.2d 165 (W. Va. 1994). *Zain III* then modified *Zain II* by permitting an individual to challenge serology evidence through a state habeas petition where serologists other than Fred Zain were involved. *Zain III*, 633 S.E.2d 762.

determined that Myers's findings regarding the coat, pants, and car doors each contained certain aspects that were "not supported by data." J.A. 350. The investigators also noted that the worksheets for the pants and coat appeared to have been altered.

In addition to filing this second habeas petition, Gray also amended his first habeas petition to include his claims based on the *Zain III* report. The West Virginia court eventually consolidated Gray's second habeas petition with the claims remaining in his first petition. This consolidated petition remains unresolved.[3]

On September 27, 2013, Gray filed the underlying 28 U.S.C. § 2254 habeas petition in the United States District Court for the Southern District of West Virginia. Appellee David Ballard then moved to dismiss the petition as untimely. The motion was referred to Magistrate Judge Dwane L. Tinsley, who rendered a Proposed Findings and Recommendation.

The magistrate judge found that "[t]he only definitively false evidence asserted to have been discovered by [Gray] since his trial is the fact that his blood type was different than that presented by Myers in his report and suggested in his trial testimony." *Gray v. Ballard*, Civ. No. 2:13-23807, 2015 WL 1292787, at \*23 (S.D.W. Va. Mar. 23, 2015). The magistrate judge then explained that this fact was not relevant to Gray's conviction, because Gray had admitted that the victims were at his house and that he transported them in his van to Tank Hill. The magistrate judge added that Gray "received the

---

[3] The district court below did not reach the issue of failure to exhaust, so it need not be discussed here.

serology report prior to his trial and had the opportunity to conduct his own serology testing if he believed that anything in the report was inaccurate or incomplete, including determining his own blood type," and concluded that Gray had not exercised due diligence. *Id.* at \*24. Accordingly, the magistrate judge recommended that the district court hold that neither the blood type evidence nor the *Zain III* report constituted a "factual predicate" that restarted the 1-year limitation period under 28 U.S.C. § 2244(d)(1)(D), and that the petition was therefore untimely. *Id.* at \*24–25. The district court adopted the Proposed Findings and Recommendation, and dismissed the claim as untimely. *Id.* at \*1–2. Gray now appeals.


II.

"We review de novo a district court's denial of habeas corpus relief." *Waddell v. Dep't of Correction*, 680 F.3d 384, 392 (4th Cir. 2012) (citing *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011)).

Gray was convicted in West Virginia state court, and thus brings his habeas petition under 28 U.S.C. § 2254. 28 U.S.C. § 2244(d)(1) sets a 1-year limitation on filing § 2254 claims. The statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; [or]
> > . . .

6

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Gray contends that his claim is timely under § 2244(d)(1)(D), because he could not have earlier discovered either of the factual predicates for his claims with due diligence. "Due diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence in the circumstances." *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004) (quoting *Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004)).

Gray claims that his two state habeas petitions were based on two separate factual predicates: (1) his incorrect blood type on Myers's report and (2) the factual findings in the *Zain III* report. We assume arguendo that these are in fact two distinct claims. If these claims do not fall under § 2244(d)(1)(D), then they are clearly untimely, as they needed to be filed by April 24, 1997,[4] but were not filed until 1998 and 2006 respectively.[5] We hold today that Gray would have discovered both factual predicates far earlier than he did had he exercised due diligence. For this reason, the district court was correct in holding that both his claims are untimely.

---

[4] Gray's conviction predated the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, codified in relevant portion at 28 U.S.C. § 2244, thus the 1-year limitation period under § 2244(d)(1)(A) began to run for him on April 24, 1996, the day of the Act's enactment. *Brown v. Angelone*, 150 F.3d 370, 375 (4th Cir. 1998).

[5] The dates that Gray's state habeas petitions were filed are the relevant dates here, as § 2244(d)(2) states that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation."

7

A.

Gray's first habeas petition was filed in 1998, and was based on his discovery that his blood type is different from the blood type recorded in Myers's report. Gray asserts that he could not have known that the blood type in the report was incorrect until he discovered his true blood type in 1998, after undergoing testing for medical purposes.

The Supreme Court has explained that a prisoner who attempts to use a DNA test as a factual predicate must act with reasonable promptness once the DNA sample and testing are available—he is not permitted to wait "untold years" to have the testing done, and then claim that he has "discovered" the result and "get the benefit of the rejuvenated 1-year period regardless of his lengthy delay." *Johnson v. United States*, 544 U.S. 295, 310 (2005). By this standard, Gray's claim clearly fails: Blood typing technology existed for the entire length of his conviction, yet he claimed this new "discovery" after seven years had passed.

Gray claims that his case is distinguishable because his attorney was supposed to test his blood prior to the trial, but failed to do so. This argument is inapposite. An attorney's actions are imputed to his client, *Holland v. Jackson*, 542 U.S. 649, 653 (2004), so this is not a valid reason for failing to exercise due diligence.

Gray further argues, however, that the discovery of his blood type should also be viewed as a factual predicate for an ineffective assistance of counsel claim for his counsel's failure to have his blood tested. Gray claims he could not have known that his counsel failed to test the blood until after he found out his blood type was wrong in the report. This argument fails as well. Even after a prisoner has requested that his attorney

8

take a certain action, a prisoner still must exercise due diligence himself. *See, e.g.*, *Ryan v. United States*, 657 F.3d 604, 607–09 (7th Cir. 2011) (prisoner who requests that his attorney file an appeal is still obligated to check with his attorney within reasonable period of time to ensure the attorney has done so); *Anjulo-Lopez v. United States*, 541 F.3d 814, 818–19 (8th Cir. 2008) (same); *Wims v. United States*, 225 F.3d 186, 190–91 (2d Cir. 2000) (same). Gray's attorney was supposed to have the testing conducted in 1991 before the trial. Gray, had he been exercising due diligence, would have discovered his attorney's failure to do so long before 1998.

Gray did not exercise due diligence in discovering that his blood type was incorrect in Myers's report. His habeas petition regarding his blood type is therefore untimely.

### B.

The second factual predicate that Gray claims is that, after the release of the *Zain III* report in 2006, he discovered that other parts of Myers's serology report were false. The magistrate judge found that Gray "received the serology report prior to his trial and had the opportunity to conduct his own serology testing if he believed that anything in the report was inaccurate or incomplete." *Gray*, 2015 WL 1292787, at *24. This is correct; Gray could have requested that independent testing be conducted prior to his trial. *See* W. Va. R. Crim. P. 16(1)(C) (1991) (stating that the state must allow a defendant an opportunity to inspect physical evidence). Indeed, his attorney initially made such a request, which was granted, but the attorney never had the testing completed. Because

9

Gray's attorney could have independently tested the serology evidence and discovered that parts of Myers's report were false prior to his trial, the *Zain III* report's publication in 2006 clearly cannot not be used as the start date for the 1-year limitation period. For this reason, Gray's habeas petition regarding the *Zain III* report is untimely as well.

## III.

Gray did not exercise due diligence in discovering his blood type and the facts contained in the *Zain III* report. His petition is thus untimely under 28 U.S.C. § 2244(d)(1)(D). The district court's order denying Gray's petition is therefore

*AFFIRMED*.