**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

James DeGasperin,
Petitioner Below, Petitioner

**v.)  No. 22-600** (Preston County 17-C-57)

Shelby Searls, Superintendent,
Huttonsville Correctional Center,
Respondent Below, Respondent

## MEMORANDUM DECISION

Petitioner James DeGasperin appeals the Circuit Court of Preston County's June 21, 2022, order denying his successive petition for a writ of habeas corpus.[1] The petitioner asserts that the court erred in finding that he failed to provide evidentiary support for several habeas grounds, in failing to set forth adequate findings of fact and conclusions of law, in denying relief on various grounds, and in denying his motion to obtain an expert. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

In 2007 and 2008, the petitioner was indicted for the first-degree murders of his then-girlfriend, her unborn fetus, and her four-year-old son; and for concealing his then-girlfriend's and her son's deceased bodies. Following his 2008 trial on these charges, the petitioner was found guilty of the victims' second-degree murders and of both counts of concealing a deceased human body. This Court refused the petitioner's appeal by order entered on June 3, 2009.

Later in 2009, the petitioner, while self-represented, filed a petition for a writ of habeas corpus. John Brooks was appointed to represent the petitioner, but after the petitioner sought the appointment of new counsel, Mr. Brooks was replaced by D. Adrian Hoosier II. Through Mr. Hoosier, the petitioner filed an amended petition raising the following grounds for relief: (1) the statute under which one of his convictions was obtained was unconstitutional, (2) the indictment

---

[1] The petitioner appears by counsel Jeremy B. Cooper. The respondent appears by Attorney General Patrick Morrisey and Deputy Attorney General Andrea Nease Proper. The petitioner was previously incarcerated at Mt. Olive Correctional Complex and identified the superintendent of that facility as the respondent. The petitioner is now incarcerated at Huttonsville Correctional Center, at which Shelby Searls is the superintendent. Accordingly, the Court has made the necessary substitution of parties pursuant to Rule 41 of the West Virginia Rules of Appellate Procedure.

showed on its face that no offense was committed, (3) prejudicial pretrial publicity, (4) consecutive sentences for the same transaction, (5) suppression of helpful evidence by the prosecutor, (6) the State's knowing use of perjured testimony, (7) ineffective assistance of counsel, (8) violation of double jeopardy protections, (9) excessiveness or denial of bail, (10) defects in the indictment, (11) improper venue, (12) prejudicial statements by prosecutor, (13) insufficiency of evidence, (14) severer sentence than expected, and (15) excessive sentence.

The circuit court held an omnibus evidentiary hearing over two days. Before the proceedings on the second day began, the petitioner requested that Mr. Hoosier be removed and that new counsel be appointed. The court denied the petitioner's request, citing the petitioner's prior appointment of new counsel, the length of time his habeas proceeding had been pending, the habeas proceedings conducted to that point, the presence of witnesses who were prepared to testify, and Mr. Hoosier's stated preparedness to proceed. After the second hearing day closed, the petitioner again requested that new counsel be appointed and that he be given "the opportunity to start over." The petitioner stated that if the court denied his requests, he would be forced to file a subsequent habeas petition alleging ineffective assistance of habeas counsel. The court again denied his requests, but in its ensuing seventy-six-page order addressing each of the petitioner's habeas claims and denying him habeas relief, the court stated that, under Syllabus Point 4 of *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981), the petitioner "has the right to file a subsequent petition for [a] writ of habeas corpus alleging ineffective assistance of habeas counsel if he wishes."

The petitioner appealed the circuit court's order denying habeas relief to this Court. We observed that the court made "well-reasoned findings and conclusions," concluded that the "order and record on appeal reflect no error or abuse of discretion," and, therefore, adopted and incorporated the court's findings and conclusions in affirming the court's denial of habeas relief. *DeGasperin v. Ballard*, No. 16-0133, 2017 WL 663577, at *4 (W. Va. Feb. 17, 2017) (memorandum decision). We also "note[d] that the circuit court did not address the question of whether [the] petitioner received ineffective assistance of . . . counsel from Mr. Hoosier in the habeas proceeding, instead reserving that issue for a separate habeas petition should [the] petitioner elect to pursue one." *Id.* at *3 n.1. We "d[id] not disturb the circuit court's ruling in that regard." *Id.*

The petitioner, in fact, filed a subsequent habeas petition in circuit court asserting ineffective assistance of prior habeas counsel, Mr. Hoosier, thereby initiating these proceedings. The petitioner was appointed counsel, who filed an amended habeas petition asserting ineffective assistance of prior habeas counsel. For reasons that are not clear from the record, the respondent did not challenge the petitioner's assertion that he received ineffective assistance from Mr. Hoosier, and the court did not undertake an independent analysis of Mr. Hoosier's representation. Critically, no determination that Mr. Hoosier's "performance was deficient under an objective standard of reasonableness" or that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different" appears in the record, despite the necessity of establishing both prongs of this standard to succeed in demonstrating ineffective assistance of counsel. *See* Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) (setting forth the two-prong test for establishing ineffective assistance of counsel); *see also* Syl. Pt. 5, in part, *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d

416 (1995) (providing that an ineffective assistance of counsel claim may be "dispose[d] of . . . based solely on a petitioner's failure to meet either prong of the test"). Instead, the court simply asked what remedy the petitioner sought for his uncontested assertion that he received ineffective assistance of habeas counsel. At the petitioner's suggestion, which was also uncontested, the court granted him the opportunity to relitigate the claims that he raised in his first habeas proceeding—the denial of which this Court had already affirmed. Accordingly, the petitioner filed a second amended petition for habeas relief asserting "the same . . . issues that were litigated in the [p]etitioner's first habeas proceeding." The petitioner also asserted newly discovered evidence, claiming that he obtained an expert opinion casting doubt on whether the petitioner's then-girlfriend's fetus was alive at the time of their murders.

The circuit court held an omnibus evidentiary hearing over two days: September 2, 2021, and January 26, 2022. Before day two of the hearing, the petitioner moved for leave to "obtain an expert in ballistics reconstruction . . . to assess the evidence regarding the circumstances of the gunfire in this case." The petitioner acknowledged that he had not identified such an expert, nor did he know whether he could find one. The court denied the petitioner's motion, finding that if a reconstructionist could be identified who supported the petitioner's version of events, the expert's evidence would not "have made a difference at all" since the petitioner testified to his version of events at trial. Then, in a thirty-two-page order entered June 21, 2022, the court denied the petitioner's second amended petition for a writ of habeas corpus. It is from this order that the petitioner appeals.

The petitioner raises eleven assignments of error on appeal, claiming that the circuit court erred in the following ways: (1) concluding that the petitioner failed to provide specific evidence in support of each ground raised, (2) failing to set forth findings of fact and conclusions of law on each ground raised, (3) denying relief on his claim of newly discovered evidence, (4) denying relief on his ineffective assistance of trial counsel claim, (5) denying relief on his claim that the Unborn Victims of Violence Act (West Virginia Code § 61-2-30) is unconstitutionally vague, (6) denying relief on his claim that the statute criminalizing the concealment of a deceased human body violates the petitioner's right not to self-incriminate, (7) denying claims based on constitutional errors in evidentiary trial rulings, (8) denying relief on his claim that the State knowingly used perjured testimony at trial, (9) denying relief on his sufficiency of the evidence claim, (10) denying his motion to obtain a crime scene reconstruction expert, and (11) cumulatively at trial.

In reviewing an order denying habeas relief, "[w]e review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, in part, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

Before delving into our review, though, we must narrow the bounds of it due to the fact that the petitioner has had a prior habeas proceeding. First,

> [a] prior omnibus habeas corpus hearing is res judicata as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing;

3

newly discovered evidence; or, a change in the law, favorable to the applicant, which may be applied retroactively.

*Losh*, 166 W. Va. at 762-63, 277 S.E.2d at 608, Syl. Pt. 4. Second, "[t]he general rule is that when a question has been definitively determined by this Court its decision is conclusive on parties, privies and courts, including this Court, upon a second appeal or writ of error and it is regarded as the law of the case." Syl. Pt. 1, *Mullins v. Green*, 145 W. Va. 469, 115 S.E.2d 320 (1960). The doctrine "generally prohibits reconsideration of issues which have been decided in a prior appeal in the same case, provided that there has been no material changes in the facts since the prior appeal." *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 808, 591 S.E.2d 728, 734 (2003) (quoting 5 Am. Jur. 2d *Appellate Review* § 605 (1995)); *see also Medley v. Ames*, No. 21-0113, 2022 WL 856611 (W. Va. Mar. 23, 2022) (memorandum decision) (concluding that the law of the case doctrine prohibited the habeas petitioner from relitigating claims raised on direct appeal). Third, collateral estoppel serves to "estop the relitigation by parties and their privies of any right, fact or legal matter which is put in issue and has been once determined by a valid and final judgment of a court of competent jurisdiction." *State v. Miller*, 194 W. Va. 3, 9, 459 S.E.2d 114, 120 (1995) (quoting *State v. Wilson*, 429 A.2d 931, 933 (Conn. 1980)). Accordingly, because the instant proceeding marks the petitioner's second habeas proceeding, res judicata should have limited his potential avenues for habeas relief in this proceeding to those set forth in Syllabus Point 4 of *Losh*, stated above.[2] Further, the petitioner was collaterally estopped from relitigating the grounds raised in his first habeas proceeding, and this Court's prior decision on those grounds became the law of the case. For these reasons, we affirm the circuit court's denial of habeas relief on the petitioner's assignments of error involving claims that the petitioner could not bring in this successive petition and/or that were fully litigated and decided at the circuit court level and addressed on appeal in the petitioner's first habeas proceeding.[3] *See DeGasperin*, 2017 WL 663577. While the circuit court made variations of the finding that the court "fully explored this

_____

[2] Although the petitioner at some point in the underlying proceedings asserted ineffective assistance of prior habeas counsel, the appendix record contains no order addressing that claim, much less substantiating it, so that issue is not before the Court. Nevertheless, given that the court's reconsideration of the grounds raised in the prior habeas proceeding yielded the same conclusions reached in the first habeas proceeding, the implication is that Mr. Hoosier did *not* render prejudicially ineffective assistance.

[3] Specifically, we affirm the denial of habeas relief on the petitioner's claims raised in assignments of error (4), (5), (6), (7), (8), (9), and (11). In addition, the petitioner argues in assignment of error (2) that the circuit court failed to set forth sufficient findings and conclusions on several claims, including that he received ineffective assistance of trial counsel, that the statutes under which he was convicted are unconstitutional, and that there were constitutional errors in evidentiary rulings at trial. Thus, assignment of error (2) relates in part to claims that could not be pursued in this successive petition, so we find no error in the sufficiency of the court's order as it relates to those claims. Also, in assignment of error (1), the petitioner claims that the court erroneously denied relief due to his purported failure to put forth evidence in support of "one claim or another." Upon review, we find no such conclusion with regard to the claims that the petitioner could permissibly pursue in this successive petition, so petitioner has identified no reversible error in the court's findings addressed in assignment of error (1).

4

alleged ground in [the] first habeas corpus proceeding" in resolving relitigated claims, to the extent the preclusive effect of that prior proceeding was not expressly recognized, we note that "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

This leaves for our review the petitioner's assignments of error (3), challenging the circuit court's determination on his newly discovered evidence claim, and (10), challenging the denial of his motion to obtain a crime scene reconstruction expert. Insofar as related to these claims, we also address assignment of error (2), in which he contests the sufficiency of the court's findings and conclusions.

In assignment of error (3), the petitioner argues that the circuit court erred in denying relief on his newly discovered evidence claim related to the death of the fetus victim. At the petitioner's trial, the medical examiner who performed the autopsies of his victims opined that the cause of the fetus victim's death was maternal death, having noted no physical "changes that we might see if a fetus is already deceased." Seeking to undermine this opinion, the petitioner obtained "newly discovered evidence" from Dr. Jennifer Hammers that the petitioner's fetus victim "could have" died prior to the petitioner's murder of his then-girlfriend from her use of two analgesics, propoxyphene and hydrocodone. But Dr. Hammers could not say that the medical examiner's cause of death determination was incorrect, and she acknowledged that "[t]here's no scientific way to say that the baby was not alive at the time of maternal death."

The circuit court found that Dr. Hammers's evidence "does not assist" the petitioner because Dr. Hammers did not opine that the medical examiner "violated any medical standard of care regarding her opinion relative to the death of [the] unborn child and whether the unborn child was alive at the time of maternal death." Furthermore, the court found, "the overall evidence in this case was so damaging to [the petitioner] in the underlying case such that the matters complained of regarding this issue, and frankly all issues raised in this proceeding, are rendered completely fruitless." The court also characterized Dr. Hammers's opinion as "speculative."

For a new trial to be granted on the basis of newly discovered evidence, the evidence must satisfy five criteria. *See* Syl. Pt. 4, *State ex rel. Smith v. McBride*, 224 W. Va. 196, 681 S.E.2d 81 (2009) (quoting Syl. Pt. 3, *In re Renewed Investigation of State Police Crime Lab'y, Serology Div.*, 219 W. Va. 408, 633 S.E.2d 762 (2006)) (setting forth the five elements that must be satisfied for a new trial to be granted on the basis of newly discovered evidence). One criterion is that "[t]he evidence must be such as ought to produce an opposite result at a second trial on the merits." *Smith*, 224 W. Va. at 197, 681 S.E.2d at 83, Syl. Pt. 4, in part. Here, Dr. Hammers did nothing more than hypothesize about what "could have" been; she did not offer an unequivocal opinion or impugn the medical examiner's opinion in any material way. Moreover, a review of the petitioner's trial transcript reveals that his own expert, a forensic pathologist, agreed at trial with the medical examiner's opinion that the fetus died because her mother died. Consequently, Dr. Hammers's proposition is not "such as ought to produce an opposite result at a second trial." *Id.* Because "all five elements must be satisfied" to succeed in obtaining a new trial on the basis of newly discovered evidence, the evidence's failure on that element is sufficient to affirm the circuit court's

denial of habeas relief on this ground without examination of the remaining elements.[4] *See State v. Frazier*, 162 W. Va. 935, 940, 253 S.E.2d 534, 537 (1979) (providing that "all five elements must be satisfied" to warrant granting a new trial on the basis of newly discovered evidence).

In his final claim, the petitioner assigns error to the circuit court's denial of his motion to obtain a crime scene/ballistics reconstruction expert. At trial, the petitioner testified that his then-girlfriend became enraged when he would not assist her in procuring illicit substances; that she retrieved a shotgun from the petitioner's van; and that, when the petitioner pushed the barrel of the gun down, his then-girlfriend fired it, striking her four-year-old son, who had followed the petitioner outside. Therefore, the petitioner sought to retain a reconstructionist to prove that the boy was shot in the petitioner's driveway by someone shorter than the petitioner, which, in turn, would support his version of events.

"In ruling on the motion [for additional expert fees], the trial judge should grant it if he determines that the assistance of the expert is reasonably necessary to defense counsel's development of a relevant issue in the case." Syl. Pt. 2, in part, *State ex rel. Foster v. Luff*, 164 W. Va. 413, 264 S.E.2d 477 (1980). Here, the circuit court observed that, to date, the petitioner had not identified a reconstruction expert and was unsure he could find one. Plus, at trial the petitioner testified to his version of the events, the lead investigator testified that he "always believed that [the petitioner's then-girlfriend] was murdered inside the house and . . . that [her four-year-old son] was murdered outside of the house somewhere," and the lead investigator testified to observing leaves and other debris on the child during his autopsy. Thus, the petitioner's defense was made known to the jury and corroborated in some respects by the investigation, but it ultimately proved unconvincing. Accordingly, the court did not err in denying the petitioner's motion where the issue he sought to develop was, in fact, put to the jury, and the petitioner did not identify an expert who *could* further develop the issue.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 22, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[4] The petitioner also argues that the circuit court's findings and conclusions on this claim were insufficient. He acknowledges that the court "did address" the claim, but he contends that it "mischaracterized the issue" and, therefore, failed to address the "actual purpose" of Dr. Hammers's testimony, which was to "establish an alternative theory of fetal demise." There is no merit to the petitioner's argument because, as the petitioner acknowledges, the court addressed the claim; he is simply dissatisfied with the court's findings. Moreover, he ignores the court's findings that Dr. Hammers's opinion was speculative and unavailing in view of the overwhelming evidence of the petitioner's guilt at trial—insufficient to "establish an alternative theory," in other words.

6