Phillip A. WARD, Petitioner,

v.

George TRENT, Warden, Respondent.

Civil Action No. 3:97–1107.

United States District Court,
S.D. West Virginia,
Huntington Division.

Aug. 14, 1998.

Phillip A. Ward, Mount Olive, WV, pro se.

Molly M. McGinley, Rory L. Perry II, Office of Attorney General, Charleston, WV, for Respondent.

## MEMORANDUM OPINION AND ORDER

CHAMBERS, District Judge.

Phillip A. Ward ("Petitioner") filed an application in this Court for a writ of habeas corpus. *See* 28 U.S.C. § 2254 (1996). Petitioner was convicted of first degree murder and aggravated robbery after a two day jury trial before the Honorable Daniel O'Hanlon in the Circuit Court of Cabell County, West Virginia.[1] Petitioner's conviction was affirmed on appeal by the West Virginia Supreme Court of Appeals. *See State v. Ward,* 188 W.Va. 380, 424 S.E.2d 725 (1991). Petitioner then sought and was granted an omnibus habeas corpus hearing before the Circuit Court of Cabell County, West Virginia. Judge O'Hanlon presided over Petitioner's hearing. Petitioner was represented by counsel at the state habeas proceeding. After hearing evidence and testimony from both parties, Judge O'Hanlon denied Petitioner's request for habeas relief. The West Virginia Supreme Court of Appeals refused Petitioner's habeas appeal. Following the denial of Petitioner's habeas application in state court, Petitioner applied for a writ of habeas corpus from this Court.

Petitioner alleges six (6) grounds for habeas corpus relief before this Court. Petitioner argues: (1) that the State of West Virginia failed to disclose exculpatory evidence, (2) that the jury was selected and impaneled in violation of his due process and equal protection rights, (3) that the trial court violated his Sixth Amendment right to present witnesses when it refused to allow his uncle's testimony, (4) that his attorney's performance fell below the Sixth Amendment standard for effective assistance of counsel, (5) that his due process rights were violated by the testimony of state serologist Fred Salem Zain, and (6) that "newly discovered" evidence casts doubt upon the veracity of other police officers who participated in the investigation of the crime for which Petitioner was convicted.[2]

---

1. Judge O'Hanlon sentenced Petitioner to life in prison without the possibility of parole.

2. At his state omnibus habeas corpus hearing and on appeal of the denial of his state habeas petition, Petitioner raised a claim regarding prosecutorial misconduct. During Petitioner's jury trial, the prosecutor remarked in closing argument that "only three people ... know what really happened [on the night of the murder]— the dead victim, Carol Carter, the [Petitioner], and God ... We don't have the testimony of Carol Carter or God". Petitioner did not testify at his trial. Petitioner's attorney, George Stolze, did not object to the prosecutor's remark. At his state habeas proceeding, Petitioner alleged that the prosecutor's remark was a comment on Petitioner's decision to exercise his rights under the Fifth Amendment to the United States Constitution. The state habeas judge rejected Petitioner's assertion. Surprisingly, Petitioner did not raise the prosecutorial misconduct claim in his habeas petition before this Court. Petitioner also did not assert that his attorney's failure to object to the prosecutor's remark was ineffective assistance of counsel.

## I.

## FACTS

On May 4, 1987, Carol Carter was brutally murdered in a Wendy's restaurant in Huntington, West Virginia. Ms. Carter was a night manager at Wendy's. Petitioner was a Wendy's employee assigned to Ms. Carter's night staff. Petitioner's shift at Wendy's apparently ended at 11:30 p.m. on May 3, 1987. However, according to the testimony of another Wendy's employee, Craig Sigler, Petitioner returned to Wendy's at approximately 12:15 a.m. on May 4, 1987. Petitioner, the victim, and Mr. Sigler apparently engaged in a conversation that lasted a few minutes. Then, Petitioner, the victim and Mr. Sigler exited the restaurant, but Ms. Carter apparently went back inside the eating establishment. Mr. Sigler testified that he drove away while Petitioner remained in the Wendy's parking lot. At approximately 5:45 a.m. on May 4, 1987, the store manager, Danny O'Brien, discovered a trail of blood in the Wendy's kitchen. O'Brien also found that $1,348.09 was missing from the restaurant's cash register. O'Brien contacted Deputy Sheriffs from the Cabell County Sheriff's Department, who soon arrived at the Wendy's and discovered Ms. Carter's body behind an adjacent furniture store. The medical examiner, Dr. Irvin M. Sopher, testified that the victim died from multiple blows to the head from a cinderblock that was discovered near the site of the murder. Dr. Sopher estimated that Ms. Carter died sometime between midnight and 2:00 a.m. on May 4, 1987.

The West Virginia State Police conducted an investigation of the crime. The police discovered that Petitioner, who had worked at Wendy's for approximately one year, was participating in a prison work release/ furlough program through the Huntington Work Release Center ("HWRC"). The police also found that shortly before the crime, Petitioner lacked the funds necessary to pay his bills. However, on May 4, 1987, Petitioner not only paid his overdue bills, he purchased a new car stereo.

The West Virginia State Police was not the only agency that decided to investigate Petitioner. At approximately 6:45 a.m. on May 4, 1987, Karen Spoor, a deputy administrator at HWRC, spotted Petitioner at a gas station. Ms. Spoor testified that she asked Petitioner why he was not at home as required by HWRC regulations. Petitioner told Ms. Spoor that he was "called back" to work at Wendy's. Ms. Spoor testified that she was surprised by Petitioner's statement because she had observed crime scene tape and the presence of police at Wendy's. Ms. Spoor directed Petitioner to call her as soon as he finished work. Petitioner contacted HWRC at approximately four o'clock that afternoon. HWRC sent another administrator, Linda Hawkins, to visit Petitioner at his mother's house. During the visit, Petitioner excused himself ostensibly to go to the bathroom. However, Petitioner instead jumped from a second floor window and fled from the house on foot. Police officers apprehended Petitioner about twenty (20) minutes later near his mother's house. The officers found money on Petitioner's clothing. Later, a neighbor discovered a backpack in a garbage area near Petitioner's mother's house. The backpack contained a miniature statue with the name of Petitioner's girlfriend written on it. Inside the statue were several hundred dollars in cash bundled in Wells Fargo wrappers. Wendy's bundled its money in Wells Fargo wrappers.

The West Virginia State Police conducted serology tests on the money obtained from Petitioner's person and the backpack. At Petitioner's trial, West Virginia State Police serologist Fred Salem Zain testified that he performed serology tests on the money and concluded that a substance found on the money was the blood of the victim, Carol Carter. During closing argument, the prosecution argued the serology evidence to the jury as well as the sudden change in Petitioner's financial situation. Petitioner contends that he intended to counter the prosecutor's evidence of the change in his financial status through the testimony of his uncle. Petitioner's uncle apparently would have testified that he gave Petitioner $300.00 one week prior to the murder. However, Petitioner's uncle violated Judge O'Hanlon's sequestration order by remaining in the courtroom during the prosecutor's opening statement.

The trial judge refused to permit the uncle's testimony, and the West Virginia Supreme Court of Appeals upheld Judge O'Hanlon's ruling. *See Ward,* 424 S.E.2d at 732.

After the denial of Petitioner's direct appeal by the West Virginia Supreme Court of Appeals in 1991, it was revealed that West Virginia State Police serologist Fred Salem Zain falsified his credentials and "engaged in a pattern and practice of misconduct [that] completely undermined the validity and reliability of any forensic work he performed or reported ...". *Investigation of West Virginia State Police Crime Laboratory, Serology Division,* 190 W.Va. 321, 438 S.E.2d 501, 504 (1993) (*"Zain I"*). As a result, the West Virginia Supreme Court of Appeals held that Zain's forensic work was presumptively invalid. Accordingly, persons convicted as a result of the testimony or forensic work of Trooper Zain could challenge their convictions on the basis of newly discovered evidence. *See id.*

At his omnibus habeas corpus hearing before Judge O'Hanlon, Petitioner raised a *Zain I* newly discovered evidence claim for the first time. However, Judge O'Hanlon found that contrary to the testimony of Trooper Zain, West Virginia State Troopers Smith and Myers actually performed the serology testing on the money in Petitioner's case. Judge O'Hanlon based his finding on a letter received from Trooper Smith indicating that he and Trooper Myers performed the serology testing and Trooper Zain merely interpreted the results. Judge O'Hanlon remarked that "no one has ever questioned the work of anyone else in the State Police Lab, certainly not Trooper Smith of all people." Accordingly, Judge O'Hanlon found that, despite the testimony of Trooper Zain, the serology evidence in Petitioner's case was not error. However, Judge O'Hanlon also found that even if all the serology evidence was excluded, there was enough evidence to convict Petitioner of murder. Judge O'Hanlon rejected the remainder of Petitioner's claims.

## II.

### ANALYSIS

■ The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, governs all habeas corpus petitions filed after April 24, 1996. *See Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir.), *cert. denied,* — U.S. ——, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998). Contained within the AEDPA are narrow parameters that severely restrict a federal court's scope of review over a habeas corpus petition. Specifically, the AEDPA provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d)(1) and (2). In regard to claims adjudicated on the merits in state court, the AEDPA confines federal court review to the narrow two-tiered analytical framework delineated in the statute. *See Carlson v. Ferguson,* 993 F.Supp. 969, 972–73 (S.D.W.Va.1998). Accordingly, a federal court may not grant a habeas petition for any claim that was adjudicated on the merits in state court unless the state court decision contravenes clearly established Supreme Court precedent or involves an unreasonable determination of the facts in light of the evidence presented. *Id* at 973.

Implicit within the AEDPA's two-tiered analytical framework is the mandate of federal court deference to the state court adjudication process. The question of how much deference that a federal court must grant the state court decision is an issue of debate within the federal circuits. Some courts have held that the AEDPA imposes a standard of almost complete deference to the state court process. *See Neelley v. Nagle,*

138 F.3d 917 (11th Cir.1998); *Drinkard v. Johnson,* 97 F.3d 751, 769 (5th Cir.1996). Other courts have held that although the AEDPA mandates a high degree of deference to the state courts, the statute cannot impose a standard that is so deferential that it interferes with a federal court's power to decide cases under Article III of the United States Constitution. *See O'Brien v. Dubois,* 145 F.3d 16, 21 (1st Cir.1998).

In interpreting the degree of deference that a federal court must accord to a state court decision, the Fourth Circuit has employed an extraordinarily high deferential standard. Specifically, the Fourth Circuit held that "habeas relief is authorized only when the state courts have decided [a] question by interpreting or applying relevant precedent in a manner that reasonable jurists would *all* agree is unreasonable." *See Green v. French,* 143 F.3d 865, 870 (4th Cir.1998) (emphasis supplied). Employing a definition of reasonableness adopted by the Fifth Circuit, the Fourth Circuit held that a state court decision is unreasonable only if it "is so clearly incorrect that it would not be debatable among reasonable jurists." *Id* (quoting *Drinkard,* 97 F.3d at 769). Although the *Green* Court examined only the first prong of the AEDPA's two-tiered analytical structure, this Court finds that the Fourth Circuit's extraordinarily high deferential standard is also applicable to the second prong of the statute.

■ The second prong of the AEDPA's two-tiered test bars a federal court from granting a habeas petition as to any claim that was adjudicated on the merits in state court unless the state court's decision involved an unreasonable application of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). Again, the requirement of unreasonableness governs a federal court's scope of review. A federal court may grant a petition only if it finds that the state court interpretation of the facts is unreasonable in light of the evidence presented. Utilizing the Fourth Circuit's definition of the term "unreasonable," a federal district court cannot issue a writ of habeas corpus unless it finds that no reasonable jurist can agree with the state court's interpretation of the facts. Fur-

ther, in regard to a federal court's examination of the factual basis of a state court's decision, the AEDPA imposes an additional requirement that determinations of a "factual issue made by a State court shall be presumed to be correct" and the habeas applicant must rebut the "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The requirement of an unreasonableness finding coupled with a presumption of correctness creates the inescapable conclusion that a federal court must accord the state court fact finding process an even greater degree of deference than it accords to the state court's interpretation of federal law.

The obvious result of the AEDPA's heightened deference requirement is an alteration of the federal court's authority to grant habeas relief even if it disagrees with the decision of the state court. Before enactment of the AEDPA, federal courts accorded little, if any, deference to the state court adjudication process when reviewing a habeas petition. *See O'Brien,* 145 F.3d at 20. Now, deference has emerged as the most fundamental underlying concept of federal habeas review. The inevitable impact of such a heightened deferential standard is that the federal court's capacity to review a habeas petition is reduced to the level of a rubber stamp that must dismiss a habeas petition unless the state court's findings stretch beyond the reason of any reasonable jurist. The heightened deference standard effectively precludes the granting of a federal habeas petition even in cases where a writ would be warranted under the pre-AEDPA's non-deferential review standard. Such is the result in this case.

### A. Petitioner's *Zain I* and Newly Discovered Evidence Claims

As part of his habeas application, Petitioner challenges the results of serology testing allegedly performed by Fred Salem Zain. Trooper Zain was a serologist with the West Virginia State Police who performed serology tests or interpreted the results of serology tests in hundreds of cases during the course of his law enforcement career. However, in 1993, it was revealed that Trooper Zain falsified his test results and exaggerated his cre-

dentials. *See Zain I*, 438 S.E.2d at 502. Consequently, a detailed investigation into Trooper Zain's serology work was conducted and the results of the investigation were reported to the West Virginia Supreme Court of Appeals.[3] *See id.* at 503. Judge James O. Holliday, who reported the investigative results to the West Virginia Supreme Court of Appeals, concluded that the serology tests that Fred Zain conducted *and* interpreted are presumptively invalid. *See id.* at 517.

At his state omnibus habeas corpus hearing before Judge O'Hanlon, Petitioner argued that the serology evidence in his case was invalid because of the involvement of Trooper Zain. However, Judge O'Hanlon rejected Petitioner's claim and cited a letter from Trooper Smith of the West Virginia State Police, which indicated that Trooper Smith, not Trooper Zain, performed the serology testing on the money recovered from Petitioner. Judge O'Hanlon accepted the statements contained in Trooper Smith's letter and found that Trooper Zain's serology conclusions introduced during Petitioner's trial were accurate. Judge O'Hanlon apparently based his accuracy finding, in part, on the fact that the integrity of Trooper Smith never had been questioned.

■ In his habeas application to this Court, Petitioner raises a newly discovered evidence claim concerning the credibility of Trooper Smith. Specifically, Petitioner contends that Trooper Smith was admonished for deceit in the investigation of another unrelated crime. If Petitioner's claim is correct, it could cast further doubt upon the accuracy of the serology testing in his case. The Court notes that Petitioner's newly discovered evidence claim was not exhausted before the state court. As a result, Petitioner has presented a "mixed petition" of exhausted and unexhausted claims to this Court. When a federal district court is presented with a habeas petition containing exhausted and unexhausted claims, it normally should dismiss the entire habeas petition

without prejudice. *See Rose v. Lundy*, 455 U.S. 509, 520–21, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). While a district court has the authority to deny a petitioner's unexhausted habeas claims on the merits, *see* 28 U.S.C. § 2254(b)(2), principles of comity, federalism and fairness favor exhaustion in state court unless it is obvious that the petitioner is not presenting a colorable federal claim or some other "extreme circumstance" is present. *See Lambert v. Blackwell*, 134 F.3d 506, 515 (3rd Cir.1997); *Martin v. Jones*, 969 F.Supp. 1058, 1063 (M.D.Tenn.1997). The instant case is one where the state court's decision requires the federal court to find that the petitioner is not presenting a colorable federal claim.

■ Regardless of the possible merits of Petitioner's unexhausted newly discovered evidence claim, the Court still must consider Judge O'Hanlon's second finding that the verdict was proper even if all serology evidence is excluded. In fact, Judge O'Hanlon's finding that the serology evidence, even if tainted, was harmless error precludes Petitioner's newly discovered evidence claim unless the Court finds that the holding of the state court contravened clearly established federal law as interpreted by the United States Supreme Court or was an unreasonable interpretation of the facts in light of the evidence presented. Given the high degree of deference imposed by the AEDPA, the Court cannot make such a finding.

Unquestionably, the serology evidence had a strong impact on the verdict in this case. While Petitioner's altered financial status and the money recovered from his person is persuasive evidence, it is not as powerful as the serology evidence. A test revealing that the victim's blood is contained on money found on Petitioner's person is extraordinarily compelling evidence that significantly strengthens the prosecution's case. Without such evidence, it is much less certain that the jury would have convicted Petitioner. In fact, this Court finds that the removal of the serology evidence from the prosecution's case

---

**3.** For a detailed recitation of the facts and issues surrounding the Trooper Zain investigation, see *Investigation of West Virginia State Police Crime Laboratory, Serology Division*, 190 W.Va. 321, 438 S.E.2d 501 (1993) ("*Zain I*") and *Investigation of West Virginia State Police Crime Laboratory, Serology Division*, 191 W.Va. 224, 445 S.E.2d 165 (1994) ("*Zain II*").

significantly diminishes the likelihood of a conviction. Therefore, the Court questions the state court's finding that the serology evidence was harmless error beyond a reasonable doubt.[4] However, mere disagreement with the state court's finding is not sufficient to allow the federal court to issue a writ of habeas corpus. *See O'Brien*, 145 F.3d at 27 (holding that close call cases militate strongly against the granting of habeas redress). Rather, in accordance with the AEDPA, a federal court must find that no reasonable jurist could agree with the state court's decision. *See Green*, 143 F.3d at 870. Even if this Court disagrees with the state court decision, the Court cannot find that every reasonable jurist would reach the same conclusion. Accordingly, the Court cannot grant Petitioner's application for habeas relief.

### B. Petitioner's Ineffective Assistance of Counsel Claims

■ Petitioner's remaining claims also fall victim to the strictures of the AEDPA. Petitioner argues that his attorney's performance before and during the trial fell below the Sixth Amendment standard for effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Sixth Amendment to the United States Constitution guarantees that in "all criminal prosecutions, the accused shall enjoy the right ... to have Assistance of Counsel for his defense." U.S. Const. Amend. VI. When an attorney's performance falls below a minimum level of professional competence, it may violate Petitioner's right to effective representation. *See Strickland*, 466 U.S. at 685, 104 S.Ct. 2052.

The United States Supreme Court has established a two-part test for determining when an attorney's performance violates an accused individual's Sixth Amendment right to effective representation. *See id* at 687,

104 S.Ct. 2052. The first prong of the Supreme Court's *Strickland* test requires a petitioner to show that his attorney committed an error that fell below a reasonable standard for professional competence. *See id.* The reasonableness standard is an objective test, which contemplates a wide range of acceptable professional representation. *See id.* at 689, 104 S.Ct. 2052. The second prong of the *Strickland* test requires a petitioner to show that "but for [the attorney's] unprofessional errors, the result of the proceeding would have been different." *id.* at 694, 104 S.Ct. 2052.

In this case, the question of Petitioner's counsel's representation was addressed at his state omnibus habeas corpus hearing. Petitioner presented several instances where he maintained that his attorney's performance fell below the objective standard of reasonableness. In particular, Petitioner argues that (1) his counsel failed to object to certain jury instructions, (2) that his attorney failed to challenge the composition of the grand jury, (3) that his attorney permitted the introduction of evidence pertaining to Petitioner's prior criminal conduct and status in a work release program, (4) that his attorney prevented Petitioner from testifying in his own defense, (5) that his attorney did not seek to exclude biased jurors during voir dire, (6) that his attorney failed to call Petitioner's uncle as a witness and failed to inform the uncle about the sequestration order, and (7) that his counsel failed to investigate the case and prepare for trial. After hearing testimony from Petitioner's trial attorney and argument from Petitioner, the state habeas judge found that Petitioner's trial attorney rendered effective assistance of counsel.

The claims raised by Petitioner before this Court regarding his counsel's effective assistance were litigated on the merits in state court. The state habeas court found that

---

4. Trooper Zain's false testimony concerning his credentials and his role in the testing is not the only issue casting doubt upon the fairness of the proceedings. The serology evidence provided a crucial missing link between Petitioner and the victim which no juror could ignore or discount. Petitioner was deprived of the opportunity to discover the identities of the persons who actually conducted the serology testing. Without

knowing the other troopers' identities, Petitioner's right to cross examine his accusers was impeded. *See* U.S. Const. Amend. V. At the state omnibus habeas corpus hearing, the judge based his findings on a letter from Trooper Smith. Hence, Petitioner still has not been granted an opportunity to cross-examine the troopers actually responsible for the serology testing.

Petitioner's counsel did not commit error and rendered effective performance as an attorney in this case. The Court cannot find that the state habeas court's findings contravene clearly established federal law as interpreted by the United States Supreme Court or involve an unreasonable determination of the facts in light of the evidence presented. Without addressing each claim individually, the Court simply notes that the extraordinarily high deferential standard imposed by the AEDPA once again precludes this Court from granting relief to Petitioner. Hence, there is no need in the context of this opinion to discuss each ineffective assistance of counsel claim.

### C. Petitioner's Remaining Claims

 Petitioner also challenges the prosecution's alleged failure to disclose exculpatory evidence, the selection and impaneling of the jury, and the trial court's decision to exclude his uncle's testimony. Each of these claims was thoroughly addressed on direct appeal, *see Ward,* 424 S.E.2d at 730–38, and during the state habeas proceeding. Once again, the Court cannot find that the state court's decision contravened clearly established federal law as interpreted by the United States Supreme Court or involved an unreasonable determination of the facts in light of the evidence presented. Accordingly, the Court cannot grant Petitioner a writ of habeas corpus.

### D. Sole Avenue for Relief

Petitioner's claims fall victim to the restrictiveness of the AEDPA. For many individuals like Petitioner, the federal habeas process is no longer a viable means of attacking a state court conviction. Petitioner's best avenue for obtaining relief may be the state court. Although West Virginia Code § 53–4A–1 et seq., (1967) generally allows each petitioner only one omnibus habeas corpus hearing, a petitioner may be entitled to an additional state court habeas hearing if the petitioner demonstrates a change in the law that is retroactively applicable, ineffective assistance of counsel at the habeas proceeding or newly discovered evidence. *See Losh v. McKenzie,* 166 W.Va. 762, 277 S.E.2d 606,

611 (1981). The final ground may be applicable to Petitioner's claims regarding Trooper Smith. However, such a determination must be left solely within the province of the state court. The AEDPA prevents this Court from granting relief.

### III.

### CONCLUSION

Although the result in this case would have been different under a less deferential standard of review, the AEDPA forces this Court to **DENY** Petitioner's application for a writ of habeas corpus. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court **GRANTS** Respondent's motion for summary judgment. The Court **ORDERS** that this action be **DISMISSED** with judgment entered in favor of the Respondent.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and to any unrepresented parties.