IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2017 Term

**FILED**

**November 9, 2017**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 16-1007

RALPH TERRY, ACTING WARDEN,
MT. OLIVE CORRECTIONAL COMPLEX
Respondent Below, Petitioner

v.

PHILLIP A. WARD,
Petitioner Below, Respondent

Appeal from the Circuit Court of Cabell County
The Honorable Alfred E. Ferguson, Judge
Civil Action No. 10-C-326

REVERSED AND REMANDED
WITH DIRECTIONS

Submitted:  October 4, 2017
Filed:  November 9, 2017

Patrick Morrisey, Esq.
Attorney General
Scott E. Johnson, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the Petitioner

Connor Robertson, Esq.
WESTON ROBERTSON
Huntington, West Virginia
Counsel for the Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review.  We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review."  Syl. Pt. 1*, Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

2.     "A prisoner against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence and who challenges his or her conviction based on the serology evidence is to be granted a full habeas corpus hearing on the issue of the serology evidence. The prisoner is to be represented by counsel unless he or she knowingly and intelligently waives that right.  The circuit court is to review the serology evidence presented by the prisoner with searching and painstaking scrutiny.  At the close of the evidence, the circuit court is to draft a comprehensive order which includes detailed findings as to the truth or falsity of the serology evidence and if the evidence is found to be false, whether the prisoner has shown the necessity of a new trial based on the five factors set forth in the syllabus of *State v. Frazier*, 162 W. Va. 935, 253 S.E.2d 534 (1979)."  Syl. Pt. 4, *In re Renewed Investigation of the State Police Crime Lab., Serology Div.*, 219 W. Va. 408, 633 S.E.2d 762 (2006).

ii

3. "A circuit court that receives a petition for a writ of habeas corpus from a prisoner against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence, and whose request for relief is grounded on the serology evidence, is to hear the prisoner's challenge in as timely a manner as is reasonably possible." Syl. Pt. 5, *In re Renewed Investigation of the State Police Crime Laboratory , Serology Division*, 219 W. Va. 408, 633 S.E.2d 762 (2006).

4. "A prisoner who was convicted between 1979 and 1999 and against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence may bring a petition for a writ of habeas corpus based on the serology evidence despite the fact that the prisoner brought a prior habeas corpus challenge to the same serology evidence, and the challenge was finally adjudicated." Syl. Pt. 6, *In re Renewed Investigation of the State Police Crime Lab., Serology Div.*, 219 W. Va. 408, 633 S.E.2d 762 (2006).

5. """A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that [defendant] was diligent in ascertaining and securing his evidence, and

that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Syllabus Point 1, *Halstead v. Horton*, 38 W. Va. 727, 18 S.E. 953 (1894).' Syllabus, *State v. Frazier*, 162 W. Va. 935, 253 S.E.2d 534 (1979)." Syl. Pt. 3, *In re Renewed Investigation of the State Police Crime Lab., Serology Div.*, 219 W. Va. 408, 633 S.E.2d 762 (2006).

Workman, Justice:

This case is before the Court upon the appeal of Ralph Terry, Acting Warden, Mt. Olive Correctional Complex ("the State"),[1] from the circuit court's decision granting the amended petition for writ of habeas corpus filed by Respondent Phillip A. Ward ("Respondent Ward" or "the respondent"), vacating his conviction for felony murder and ordering a new trial. The focus of the circuit court's decision was serology test results on three pieces of evidence – a $20 bill, a $5 bill, and a $1 bill – which results linked the money to the victim during Respondent Ward's underlying trial. The serology evidence at issue was ordered to be retested by the circuit court in 1994,[2] and the circuit court made specific findings regarding the evidence in a prior omnibus proceeding brought by Respondent Ward. The issue now before the Court is whether the previously adjudicated 1994 DNA results concerning the serology evidence constituted "newly discovered evidence" at the most recent omnibus hearing in 2015 that resulted in the circuit court granting Respondent Ward a new trial. Based upon our review of the parties' briefs and arguments, the appendix record, and all other matters before the Court, we find the circuit court erred in granting Respondent

---

[1]Since the filing of the petition in this case, the warden at Mount Olive Correctional Complex has changed and the acting warden now is Ralph Terry. The Court has made the necessary substitution of parties pursuant to its rules. See W. VA. R. App. P. 41. We therefore refer to the Petitioner simply as "the State." *See, e.g., Tex S. v. Pszczolkowski*, 236 W. Va. 245, 248 n.2, 778 S.E.2d 694, 697 n.2 (2015).

[2]*See In re Investigation of the West Virginia State Police Crime Lab., Serology Div.*, 190 W. Va. 321, 438 S.E.2d 501 (1993) ("*Zain I*").

1

Ward a new trial based upon newly discovered evidence.[3]  We reverse and remand the case for reinstatement of the 1987 conviction for felony murder for which Respondent Ward was sentenced to life without mercy.

## I.  Factual and Procedural Background

### A.  Underlying Trial

In order to have a full understanding of the issue before the Court, it is necessary to begin with the underlying facts proven at the criminal trial.[4]  On the night of May 3, 1987, Carol Carter, a night manager at a Wendy's restaurant in Huntington, West Virginia, was brutally murdered when she was beaten in the head with a cinder block during a robbery of the restaurant.  *Ward*, 188 W. Va. at 382, 424 S.E.2d at 727.  Respondent Ward, who was an inmate in the Huntington Work Release Center ("HWRC"), was also working at the restaurant that night, although his shift ended at 11:30 p.m.  Respondent Ward and another employee, Craig Sigler, left Wendy's at the end of Respondent Ward's shift only to return to the restaurant about ten minutes later.  They knocked on the window and Ms. Carter

---

[3]Because the Court reverses on this assigned error, we do not expressly discuss the State's other assigned errors that the circuit court erred in failing to apply res judicata concerning the issue of Zain's testimony and the circuit court erred in making findings of fact that were clearly erroneous, including finding the serology evidence to be false, finding Mr. Zain did the serology testing and determining that the existence of a third party's DNA on the money was exculpatory.  But a discussion of erroneous factual findings made by the circuit court is incorporated into the discussion of newly discovered evidence.

[4] Facts are taken from this Court's decision in *State v. Ward*, 188 W. Va. 380, 424 S.E.2d 725 (1991), and the trial transcript, which is part of the appendix record.

2

let them into the restaurant. *Id.* Sometime around 12:15 a.m., all three employees decided to leave Wendy's, but Ms. Carter went back inside the restaurant. Mr. Sigler testified that Respondent Ward was still leaning against his vehicle in the Wendy's parking lot when Mr. Sigler was leaving the parking lot. *Id.*

Around 5:45 a.m., a Wendy's store manager discovered a bloody scene at the restaurant. The manager testified that he saw Ms. Carter's vehicle still in the parking lot when he arrived. He also noticed Ms. Carter's keys on the sidewalk just outside the restaurant's unlocked front door. The manager notified law enforcement and waited for them to arrive. When he entered the store with law enforcement, the manager found approximately $1348.09 missing from a safe in the office area of the restaurant. Ms. Carter's body was discovered behind a furniture store adjacent to the restaurant. *Id.*

Also that same morning around 6:40 a.m., Karen Spoor, an employee of the West Virginia Department of Corrections who was working at the HWRC, saw Respondent Ward at an area gas station. When she asked Respondent Ward why he was not at home as required by the HWRC, he told her that he had been called back into work because his employer wanted to speak with him. Ms. Spoor testified that she had seen police vehicles at the Wendy's and directed Respondent Ward to call her as soon as he left the Wendy's. Respondent Ward failed to comply with her instructions and did not contact her until 3:55

3

p.m. that day. Respondent Ward was at his mother's home, with whom he was living, at the time he called Ms. Spoor. Ms. Spoor kept him on the phone while an HWRC administrator went to the home. When the administrator arrived, after some initial questioning regarding Respondent Ward's failure to obey Ms. Spoor's instructions, Respondent Ward excused himself for a moment and went upstairs in his mother's home. When Respondent Ward failed to return within a few minutes, the administrator went upstairs and discovered that he had fled the home. Respondent Ward was found about twenty minutes later two blocks from his mother's house. *Id.* at 383-84, 424 S.E.2d at 728-29.

There also was evidence that Respondent Ward had financial difficulties. Prior to May 4, he and his girlfriend had no money, had the electric service disconnected at their apartment because of nonpayment of the bill, and had moved back into Respondent Ward's mother's home. *Id.* at 383, 424 S.E.2d at 728. Yet, on May 4, Respondent Ward and his girlfriend purchased a new car stereo with cash, paid for the stereo to be installed and paid an overdue electric bill in cash. *Id.*

Regarding the evidence at issue in this case, a $20 bill obtained from the electric company's night cast deposit had a bloodstain on it. A $5 bill that had a bloodstain was found in Respondent Ward's wallet. Finally, a knapsack containing items belonging to

4

the respondent was found in a garbage can next to a neighbor's home. Inside the knapsack was paper box containing thirty-five $1 bills, one of which had a bloodstain.[5] *Id.*

The serology evidence was tested at the West Virginia State Police Crime Laboratory ("State Police Crime Lab"). Fred Zain testified at trial that Ms. Carter's blood sample showed she was Type B and that only 9 in every 10,000 of the general population of West Virginia have Type B blood characteristics. Concerning the evidence in question in this case, Mr. Zain testified that blood stain evidence found on a $20 bill from the electric company, a $1 bill from the knapsack and the $5 bill taken from Respondent Ward's wallet all contained blood characteristics that were consistent with Ms. Carter's blood characteristics. But on cross-examination, Mr. Zain testified that he could not identify "whose [sic] blood it is for sure." Further, Mr. Zain stated that the bloodstains on the bills could have been on those bills for at least two months and could have come from anyone and anywhere in the world.

---

[5]There was other money, including seven $20 bills and two $100 bills, as well as rolled and loose coins found inside the knapsack. *Id.* at 383 n.7, 424 S.E.2d at 728 n.7. The rolled coins were wrapped in Wells Fargo wrappers, which were the same type of wrappers that Wendy's used for coins.

At the close of all the evidence, Respondent Ward was convicted of felony murder and sentenced to life without mercy. This Court affirmed his conviction on direct appeal. *Id.* at 393, 424 S.E.2d at 738.

## B. Habeas Proceedings

On December 1, 1993, following *Zain I*,[6] Respondent Ward filed a petition for habeas relief in this Court seeking to have DNA testing of "any forensic evidence" still available in his case due to "the involvement in my prosecution of former West Virginia State Police serologist Fred Zain." By order entered December 8, 1993, this Court remanded the matter to the circuit court for proceedings consistent with *Zain I*.

Following the Court's directive, on April 22, 1994, the circuit court ordered the re-testing of any of the evidence in the criminal trial being disputed under *Zain I*.[7] The

---

[6]In *Zain I*, this Court addressed the results of a court-ordered investigation of Fred Zain, a State Trooper who worked in the State Police Crime Lab and had a "long history of falsifying evidence in criminal prosecutions." 190 W. Va. at 323, 438 S.E.2d at 503. As part of the recommendations for resolving Zain issues, the Court provided for DNA testing of serology evidence at issue. *Id.* at 327, 438 S.E.2d at 507. The Court indicated that "the only issue is whether the evidence presented at trial, independent of the forensic evidence presented by Trooper Zain, would have been sufficient to support the verdict." *Id.* at 362, 438 S.E.2d at 506. Further, we held in syllabus point two of *Zain I* that "[a]lthough it is a violation of due process for the State to convict a defendant based on false evidence, such conviction will not be set aside unless it is shown that the false evidence had a material effect on the jury verdict." *Id.* at 322, 438 S.E.2d at 502.

[7]The circuit court, by order entered July 20, 1994, consolidated three separate habeas
(continued...)

6

DNA testing was performed by Roche Biomedical Laboratories ("Roche"), which issued a report dated December 1, 1994.[8] On or after September 15, 1995, Respondent Ward began arguing for a new trial based upon the DNA test results. First, Respondent Ward filed a document entitled "Motion and memorandum[,]" which was one paragraph requesting "a new trial in view of newly discovered evidence[.]" Respondent Ward also filed a document entitled "Newly Discovered Evidence: DNA Test Results are Inconsistent with and are Contradictory of the State's Evidence and Argument at Trial" wherein he argued that "[t]he findings of Dr. Bing are incongruent with those of Zain and if they had been put before a jury at trial, in view of the professional qualifications of Dr. Bing, would, in . . . [Respondent Ward's] view, have raised sufficient reasonable doubt to have resulted in an acquittal." Finally, Respondent Ward filed a document entitled "Memorandum" in which he argues that Fred Zain lied, entitling him to a new trial and that there was a "'legitimate possibility' that some or all of the 'evidence' offered by the prosecution in the Ward case was actually never tested by Fred Zain."

---

[7](...continued)
petitions that had been previously filed by Respondent Ward and included a challenge to the State's knowing "use of perjured testimony of Fred Zain."

[8]The serology evidence was also sent to CBR Laboratories, Inc., but there apparently was insufficient material left for testing. Consequently, Respondent Ward's expert, Dr. David H. Bing, Ph.D., analyzed the Roche results and reports in rendering his opinion.

The State filed its opposition arguing that the DNA results[9] from the testing done by Roche were "consistent with the original findings in the case." According to the State, the Roche report did not eliminate Ms. Carter as a possible source on the $20 bill, there was just not enough of the 2 allele[10] present to be reported. Further, the DNA testing by Roche found that Ms. Carter's DNA type was found on the $1 bill. Also, unlike the serology testing, the DNA testing in the Roche report also indicated that Respondent Ward's DNA type was present on both the $20 and $1 bills. As the State argued, "all of the test results obtained by Roche corroborate the earlier work of the State Police lab and the testimony at trial." Finally, the State argued that even if the serology testing was excluded, there was still sufficient evidence to convict.

On March 28, 1996, the circuit court conducted an omnibus hearing. At the beginning of the hearing, counsel for Respondent Ward noted that there had been an agreement reached between counsel to allow affidavits from three technical experts, including Ted Smith, who were involved in the DNA testing "to submit questionnaires that had to do with their reports[.]" And the circuit court considered the questionnaires submitted by Dr. Bing, then-Sgt. Ted Smith and Marcia Eisenberg in deciding the habeas petition

---

[9]As explained by the State in its response, "unlike the original serology work, which tested only the blood on the money, the . . . [DNA] testing, being much more sensitive, can also pick up sweat, dropped skin cells, etc. . . ."

[10]Ms. Carter's DNA profile consisted of DQ Alpha alleles 2 and 4.

8

before it. Further, the State argued that when Respondent Ward's own expert, Dr. Bing, was asked whether the DNA results were inconsistent with the findings that Zain reflected in his testimony, Dr. Bing responded in the negative. Also, Sgt. Smith indicated in regard to the serology testing performed on the evidence: "The work is right. The numbers are right. Zain didn't do it [referring to the serology testing]. He just testified about it." Finally, the State argued at the hearing: "Both Ted Smith and Marcia Eisenberg say that the DNA testing – the PCR DNA testing and the results obtained therefrom do not differ in any way or contradict any of the matters to which Sergeant Zain testified."

By order entered June 13, 1996, the circuit court denied habeas relief.[11] Of particular importance to the instant appeal, the circuit court found:

> 1) The opinion by Judge Holliday which gave rise to the Supreme Court opinion indicates the main issue of concern in these cases is testing done by Sergeant Zain at the lab as opposed to cases where he testified about testing done by others, at least where his testimony is consistent with the test results found by others.
> 2) In this case all or virtually all of the serology testing performed on the items of money in issue was done by either Sergeant Ted Smith or Trooper Brent Myers and Sergeant Zain's testimony at trial was consistent with those test results.
> 3) *Sergeant Smith has reviewed the testimony of Sergeant Zain regarding the items of money in issue and has affirmed that his testimony was accurate in this case based on the tests he (Smith) performed on said money.*
> 4) *The work performed and analyzed by the experts from both the State's lab and petitioner's lab do not exclude and therefore*

---

[11]The Court refused Respondent Ward's appeal from this order.

9

*include both the victim and petitioner as possible donor's of the DNA found on the items of money in this case.*

5) The affidavits of all the experts in this case, reflected by their answers to the questionnaires presented to them in lieu of courtroom testimony, make it clear that DNA results can never conclusively establish the guilt of a defendant, as the most such testing can ever do is include or exclude a particular person as a possible donor of a particular sample.

6) *The work of the experts from both labs do not contradict either the work of the CIB lab, namely Sergeant Smith or Trooper Myers, regarding the money in issue, or the testimony of Sergeant Zain relating thereto.*

7) In the event it is necessary to exclude the serology evidence and Sergeant Zain's testimony in this case, this Court is of the opinion that there was sufficient additional evidence to convince reasonable minds beyond a reasonable doubt of the guilt of the petitioner. . . .

(Emphasis added).

Following the 1996 determination of Respondent Ward's state habeas, he filed a federal habeas in the United States District Court for the Southern District of West Virginia. *Ward v. Trent*, 19 F. Supp. 2d 608, 612 (S.D.W.Va. 1998). The district court found it could not grant any habeas relief because of the circuit court's determination that even if the serology evidence were excluded, the criminal conviction was proper. *Id.* at 613. Respondent Ward appealed the district court's decision to the Fourth Circuit. *See Ward v. Trent*, 188 F.3d 505, 1999 WL 638606 (4th Cir. 1999) (unpublished disposition), *cert denied*, 529 U.S. 1055 (2000), which affirmed the district court. The Fourth Circuit concluded, after examining all the evidence offered against Respondent Ward during his trial, that

> [w]hile the serology evidence was no doubt compelling, we find that the above-detailed evidence presents a clear picture of guilt beyond a reasonable doubt, and that there is no reasonable likelihood that the jury would have acquitted had it received only this foregoing account of events. The addition of the serology evidence serves only to remove all doubt from the issue, a burden that the state need not carry in order to convict.

*Id.* at *6 (citation omitted).

Respondent Ward filed another habeas petition in state court on April 17, 2002, wherein he claimed that he received ineffective assistance of counsel, in part, due to Fred Zain's "perjured testimony" and his trial counsel's failure to raise the issue that "Zain did not perform said serology tests[;]" that there was "newly discovery evidence" based on the fact that Sergeant Smith and Trooper Myers did the serology testing; and that Fred Zain testified falsely that he did the testing. The State moved to dismiss this petition because

> [i]n order to warrant a new trial, the Petitioner would have to show the court that his 'newly discovery evidence' did in fact exist and that it would have changed the outcome of his trial. The Petitioner has raised these issues in various guises in every court available to him and each time, the verdict of guilt has been upheld.

By order entered November 15, 2002, the circuit court denied Respondent Ward habeas relief on his claim of "newly discovered evidence," finding that it had already

> determined that the independent testing performed by Roche and CBR did not contradict the test results introduced in the original trial, but that even excluding said evidence in its entirety, "that there existed sufficient additional evidence to convince

11

reasonable minds beyond a reasonable doubt of the guilt of the Petitioner."

Further, the circuit court found that Respondent Ward failed to show that "'newly discovered evidence' did in fact exist and that it would have changed the outcome of his trial."

In another petition for habeas corpus filed by Respondent Ward on July 1, 2004, he again claimed that "[h]abeas corpus counsel failed to present the states (sic) known use of perjured testimony of Fred Zain[.]" By order entered January 6, 2005, the circuit court again found the claim to be without merit, stating "[t]he Zain issue was fully and finally adjudicated after an exhaustive hearing on the merits in Civil Action No. 93-C-2557."

On July 6, 2006, Mr. Ward filed another petition for habeas corpus. This petition was based upon this Court's decision in *In re Renewed Investigation of the State Police Crime Laboratory, Serology Division*, 219 W. Va. 408, 633 S.E.2d 762 (2006) ("*Zain III*"),[12] wherein the Court received the report from a third investigation into the Serology

---

[12]In *In re Investigation of the West Virginia State Police Crime Laboratory, Serology Division*, 191 W. Va. 224, 445 S.E.2d 165 (1994) ("*Zain II*"), the Court held in syllabus point three that

> [s]erology reports prepared by employees of the Serology Division of the West Virginia State Police Crime Laboratory, other than Trooper Fred S. Zain, are not subject to the invalidation and other strictures contained in *In the Matter of an Investigation of the West Virginia State Police Crime Laboratory, Serology Division*, 190 W. Va. 321, 438 S.E.2d 501

(continued...)

12

Division of the State Police Crime Lab on the specific issue of whether serologists other than

Fred Zain had falsified evidence in criminal trials. In *Zain III*, the Court provided a prisoner

means to challenge the testing performed by a serologist with the West Virginia State Police

Crime Laboratory, other than Fred Zain. *Id.* at 409, 633 S.E.2d at 763, Syl. Pt. 4. Despite

Respondent Ward's request for review under *Zain III*, by order entered November 20, 2007,

the circuit court summarily denied his petition.

On November 25, 2008, Respondent Ward filed another petition for habeas

corpus in which three of the five grounds raised involved issues related to Fred Zain and the

serology testing introduced at his trial, including ineffective assistance of counsel claims

relating to those issues, and a challenge to his conviction under *Zain III*. In a ten-page order

entered February 10, 2009, the circuit court recounted a factual summary of Respondent

Ward's conviction and petitions for habeas corpus, as well as all the prior grounds alleged

by him. The circuit court then stated:

> In the Court's prior orders, this Court made extensive
> findings of fact and law with reference to each and every ground
> raised by Petitioner. The Petitioner was represented by highly
> qualified, trial-experienced, capable attorneys. Two independent
> laboratories re-examined the physical blood evidence. Error
> could not be shown to exist sufficient to raise a doubt as to its

---

[12](...continued)
(1993).

Thus, there was no procedure adopted by the Court, like that in *Zain I*, which entitled an
individual to additional review of serology evidence.

reliability. But even so, the Court has already ruled specifically that taking away any consideration of any of the serology evidence, there remained more than enough evidence to convince a jury of the defendant's guilt.

This Court refused Respondent Ward's petition for appeal.

On April 22, 2010, Respondent Ward filed his ninth petition for habeas corpus, which is the subject of the instant appeal, again arguing that Fred Zain offered "prejudicially tainted and misleading trial testimony, based on evidence developed by other serologists at the laboratory" and because of this he was entitled to a *Zain III* hearing. After counsel was appointed to represented Respondent Ward, an amended petition was filed wherein he asserted that

> the subsequent testing of the $20.00 bill found in the AEP deposit box and the $1.00 bill found in the backpack show that the blood characteristics assigned to those bills by Trooper Smith and Trooper Myers and testified to by Trooper Zain are inaccurate and therefore tainted and, therefore, constitute newly discovered evidence.

Respondent Ward maintained that "this tainted and false evidence was discovered since the time of the trial[,]" making it "newly discovered evidence."

The State argued in its memorandum in response to the amended omnibus petition for writ of habeas corpus ad subjiciendum that

> [i]t is the State's position that the testimony of Zain is *res judicata* as it was raised and addressed in the Petitioner's previous habeas corpus petition being Cabell County Civil

14

Action No. 93-C-2557. Further, the Petitioner appealed the action taken in said 93-C-2557 habeas hearing to the West Virginia Supreme Court, which was refused.

Further, the State argued that the "Roche report is wholly consistent with and corroborative of the State's original testing and testimony in this case." Thus, the serology testing was not false.

A full omnibus hearing was held on October 30, 2015.[13] Jim Scheidler, Ted Smith[14] and Howard Brent Myers, all of whom handled the serology in Respondent Ward's case, testified. Similar to what was before the circuit court in 1996, Respondent Ward was focused upon serology evidence connected with three pieces of evidence – a $20 bill found in the American Electric Power nightly deposit; a $5 bill found in Respondent Ward's wallet; and a $1 bill found in a knapsack belonging to the respondent. Significantly, this focus arose out of the report issued on December 1, 1994, by Roche – the exact report that was the subject of the 1996 habeas proceeding.

---

[13]The State did not object to a full omnibus hearing.

[14]It is important to note that Ted Smith and Brent Myers signed affidavits and issued letters to the prosecutors as part of the March 1996 habeas proceeding.

15

Specifically, at the omnibus hearing,[15] Mr. Smith testified that the DNA is identified through genetic markers and is designated as a series of numbers. As Mr. Smith explained, "[a] person can be either one type or two types, depending on what they inherit from their parents. They designate them as a 1.1, 1.2, 1.3, 3, 4, and 2. So a person can be any combination of those designations." Mr. Smith testified that the DNA test results from the 1994 report for the $20 bill showed the presence of the "[a] 1.1, 1.2, 3, and 4" alleles.[16] He stated that the report indicated "that the presence of the 2 [allele] is indicated, but it failed to meet interpretation standards and, thereby, could not be reported." Mr. Smith testified that "where the number 2 allele was present but not strong enough to be indicated[,] . . . Carol Carter was not excluded . . . by the DNA. . . ." In other words, Mr. Smith unequivocally testified that the DNA testing did not prove that the serology testing was false as the victim "can't be excluded as contributing to the DNA[.]" Further, Mr. Smith testified that despite the DNA test results indicating that the presence of a 3 allele on the $20 bill, which indicated that there was a third party contributor of DNA on the $20 bill, this did not contradict the serology. As was indicated by Mr. Smith's testimony, other people can handle money and their serology not be on it, but DNA may be found.

---

[15]Respondent Ward's expert, Dr. Bing, did not testify at this omnibus hearing as he had died. All the circuit court had before it was the same evidence from Dr. Bing that had been presented at the 1996 omnibus hearing.

[16]Respondent Ward's DNA profile consisted of a DQ Alpha type of a 1.2 and 4 allele. As previously mentioned, Ms. Carter's DNA profile consisted of DQ Alpha alleles 2 and 4. *See supra* note 10.

Turning to the DNA testing of the $5 bill, the Roche report indicated that there were no alleles detected. Mr. Smith testified that it was entirely possible that no alleles were found because the entire area of the stain could have been consumed when the serology testing was done. Mr. Smith also stated concerning the $20 bill and $5 bill, that Fred Zain "accurately reported what we advised him that we found when we did the analysis of those particular items."

Finally, the DNA testing on the $1 bill confirmed the serology testing involving the victim's blood being on the bill.[17] Further, the DNA testing showed that Respondent Ward's DNA characteristics were also present on the $1 bill even though the serology evidence did not show that his blood type was on this bill. According to the testimony, this was not an inconsistent finding, it was just that the DNA testing showed more than the serology as DNA originates from more sources than just blood. For example, DNA is found in skin cells, sweat and tears. The DNA testing on the $1 bill also showed a third contributor that the serology did not show. Again, this is not inconsistent, it is just that the DNA showed more possible contributors than the serology testing. Further, Mr. Smith stated that the DNA test results did not exclude Respondent Ward and did not exclude the victim.

---

[17]The evidence showed that Mr. Myers did the testing on the $1 and he confirmed that the DNA found on that bill was consistent with the victim's.

By order entered September 29, 2016, the circuit court granted habeas relief to Respondent Ward, vacating his underlying conviction and ordering a new trial. Specifically, the circuit court found regarding the forensic evidence that Fred Zain's testimony before the jury was false, that the $1 bill was excluded "as a matter of law pursuant to the *Zain I* opinion . . . ," and that the $20 bill was excluded "as false," because "Dr. Bing, an unbiased and accredited scientist, authored an opinion that the DNA completely excluded Ms. Carter's DNA profile from the twenty-dollar bill." The circuit court found that "there was an insufficient amount of blood evidence" remaining on the $5 bill for DNA testing and therefore it had "no opinion" as to that piece of evidence.[18] Further, the circuit court determined that this evidence is "newly discovered" because it was "discovered after the Petitioner's criminal trial." Finally, the circuit court determined that the evidence would likely produce a different result at trial. It is from this order, the State now appeals.

## II.  Standard of Review

We have set forth the following standard of review for habeas proceedings:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard;

---

[18]The circuit court also found that there was a $50 bill that was not offered into evidence in the underlying trial that had the blood type of a third party, not that of the victim or the respondent. The circuit court found that this piece of evidence supported Respondent Ward's theory that there was a third party present; however, the circuit court ignored the testimony that DNA testing provides more information than serology testing.

18

the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1*, Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006). Under these standards, the Court examines the issues before us.

## III. Discussion

The determinative issue now before the Court is whether the previously adjudicated 1994 DNA results constituted "newly discovered evidence" at the most recent omnibus hearing in 2015, which resulted in the circuit court granting Respondent Ward a new trial. The State argues that the circuit court erred in holding that the DNA evidence proves that the serology evidence was false and the DNA evidence was not newly discovered evidence under the five factor test set forth in the syllabus of *State v. Frazier*, 162 W. Va. 935, 253 S.E.2d 534 (1979).

Conversely, Respondent Ward argues that the circuit court's findings are supported by the record. Respondent Ward also contends that the evidence is newly discovered evidence because all that is required of the rule is that "the DNA evidence was not discovered at the time of trial." According to Respondent Ward, "[t]here is no need to speak of prior habeas petitions. Again, *Zain III* allowed a new review of the evidence and therefore prior petitions are not relevant." The Court disagrees.

19

In *Zain III*, the Court enacted the following procedure:

> A prisoner against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence and who challenges his or her conviction based on the serology evidence is to be granted a full habeas corpus hearing on the issue of the serology evidence. The prisoner is to be represented by counsel unless he or she knowingly and intelligently waives that right. The circuit court is to review the serology evidence presented by the prisoner with searching and painstaking scrutiny. At the close of the evidence, the circuit court is to draft a comprehensive order which includes detailed findings as to the truth or falsity of the serology evidence and if the evidence is found to be false, whether the prisoner has shown the necessity of a new trial based on the five factors set forth in the syllabus of *State v. Frazier*, 162 W. Va. 935, 253 S.E.2d 534 (1979).

219 W. Va. at 409, 633 S.E.2d at 763, Syl. Pt. 4. Further, the Court held in syllabus points five and six of *Zain III*:

> A circuit court that receives a petition for a writ of habeas corpus from a prisoner against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence, and whose request for relief is grounded on the serology evidence, is to hear the prisoner's challenge in as timely a manner as is reasonably possible.

> A prisoner who was convicted between 1979 and 1999 and against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence may bring a petition for a writ of habeas corpus based on the serology evidence despite the fact that the prisoner brought a prior habeas corpus challenge to the same serology evidence, and the challenge was finally adjudicated.

*Id.* at 410, 633 S.E.2d at 764, Syl. Pts. 5 and 6.

According to this Court's decision in *Zain III*, "a prisoner who challenges his or her conviction *must prove that the serologist offered false evidence in his or her prosecution.*" 219 W. Va. at 415, 633 S.E.2d at 769 (emphasis added). Also, the prisoner must satisfy the following standards indicating that a new trial is warranted:

> "'A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that [defendant] was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) *Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point.* (4) *The evidence must be such as ought to produce an opposite result at a second trial on the merits.* (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.' Syllabus Point 1, *Halstead v. Horton*, 38 W. Va. 727, 18 S.E. 953 (1894)." Syllabus, *State v. Frazier*, 162 W. Va. 935, 253 S.E.2d 534 (1979).

*Zain III*, 219 W. Va. at 415, 633 S.E.2d at 769 and Syl. Pt. 3. (emphasis added). Further, we have recognized that "[a]ll five factors must be proven before a new trial will be awarded." *Anstey v. Ballard*, 237 W. Va. 411, 422, 787 S.E.2d 864, 875 (2016). Consequently, under the foregoing, Respondent Ward must prove two things before being entitled to a new trial:

21

1) the serology evidence offered during his trial was false; *and* 2) the five standards set for in *Frazier* for granting a new trial based upon newly discovered evidence are met.

We begin our analysis of the instant case under *Zain III* by first determining whether Respondent Ward proved that the serology evidence offered against him at the underlying trial was false. Despite the circuit court's findings to the contrary, the Court finds that, based upon review of the appendix record, Respondent Ward did not prove that the serology evidence was false. What is readily discerned from the appendix record is that Respondent Ward failed to offer any *new* evidence that demonstrated that the serology evidence was false. Instead, the evidence offered at both the omnibus hearing in 1996 and again in 2015 was the same. The circuit court, with a different judge presiding, had already determined in 1996 that the DNA test results at issue in the instant habeas proceeding were not inconsistent with the serology test results that were introduced in Respondent Ward's underlying trial. Yet, in the instant habeas proceeding, Respondent Ward failed to offer any new testimony or evidence proving the falsity of the serology evidence. Likewise, the circuit court failed to offer any explanation as to why it was now determining that the prior findings made by the circuit court, albeit a different judge, were in error or, based upon new evidence being offered, were now proven to be false. All the circuit court did was re-evaluate the evidence previously adjudicated and make different findings and conclusions. Thus, the Court concludes that the circuit court clearly erred in its findings that contravene the weight of the evidence in this case. *See Mathena*, 219 W. Va. at 418, 633 S.E.2d at 772, Syl. Pt. 1.

22

Next, the Court addresses the five factors set forth in *Frazier*, all of which Respondent Ward had to prove in order to be granted a new trial. *Frazier*, 162 W. Va. at 935-36, 253 S.E.2d at 534-35. First, the newly discovered evidence "must appear to have been discovered since the trial." *Id.* The circuit court found that this factor was clearly met as "[i]t wasn't until 2006 when the West Virginia Supreme Court afforded the Petitioner a right to bring the Habeas challenge. Additionally, the DNA testing wasn't performed until 1994, well after the Petitioner's criminal trial." If this habeas proceeding were the first time the serology evidence had been subjected to DNA testing or if the serology evidence had undergone additional DNA testing as part of the 2015 omnibus proceeding, then Respondent Ward would have been able to prove this first factor. But both Respondent Ward and the circuit court ignored all the prior litigation concerning the 1994 DNA testing of the serology evidence wherein the state court had found the serology evidence not to be false and both the state and federal courts had found that even if the serology evidence were excluded, the remaining evidence against Respondent Ward was sufficient to convict. In other words, there was nothing new that was discovered since the trial. *Id.* This simple fact was catastrophic to Respondent Ward's request for relief. As such, Respondent Ward's claim fails on factor one of the *Frazier* test. *See id.*

Regarding the third factor[19] in *Frazier*, Respondent Ward had to prove that the

newly discovered evidence was "new and material." *Id.* The circuit court determined "[t]his

evidence is new as it was not obtained until after the time of trial and could not have been

obtained until after the investigation was performed." But the circuit court again ignored the

fact that the evidence had been obtained in 1994 and litigated in the 1996 omnibus hearing.

Succinctly stated, the "newly discovered" evidence in this case was not, and is not, new

evidence. What was litigated at the most recent habeas proceeding is the same serology and

DNA evidence, including the same reports and witnesses, that was the subject of the 1996

omnibus hearing.


Finally, Respondent Ward had to prove that "[t]he evidence must be such as

ought to produce an opposite result at a second trial on the merits."[20] The circuit court found

that "[n]ot only does this evidence exclude . . . [Respondent Ward] from the twenty dollar

bill, it identifies the presence of a third party contributor to the blood. This, at a minimum,

would have afforded . . . [Respondent Ward] with an opportunity to discredit Mr. Zain." The

analysis by the circuit court of this factor completely fails to consider the determinations

---

[19]The State concedes that Respondent Ward proved the second *Frazier* factor, requiring him to act diligently in securing the evidence. *Frazier*, 162 W. Va. at 935-36, 253 S.E.2d at 534-35.

[20]Because Respondent Ward failed to prove three of the first four *Frazier* factors, it is unnecessary to address the fifth factor. *Id.*; *see Anstey*, 237 W. Va. at 422, 787 S.E.2d at 875.

previously made by the circuit court, albeit a different judge, and the federal courts that even if the serology evidence and Mr. Zain's testimony were excluded, there was sufficient evidence to convict Respondent Ward beyond a reasonable doubt. *See Ward*, 1999 WL 638606 at *6 ("[W]e find that the above-detailed evidence presents a clear picture of guilt beyond a reasonable doubt, and that there is no reasonable likelihood that the jury would have acquitted had it received only this foregoing account of events."). In light of all the evidence introduced against Respondent Ward at his trial,[21] which the circuit court failed to address, we agree with the prior determinations by the circuit court and federal courts that even if the serology evidence were excluded, there was sufficient evidence presented to the jury to support Respondent Ward's conviction.

## IV. Conclusion

Based upon the foregoing, the Court reverses the decision of the circuit court and remands the case for reinstatement of Respondent Ward's conviction and sentence.

Reversed and remanded
with directions.

---

[21]*See* discussion *supra* under subsection I. A.

25